DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

IVA LUE-MARTIN                  :        CIVIL ACTION
                               :
        v.                     :
                               :
The March Group, et al.        :        NO. 03-0105

MEMORANDUM

Bartle, C.J.                                  July 30, 2008

        Plaintiff, Iva Lue-Martin, has sued defendants, The
March Group, LLLP ("The March Group"), Southern Saints
Investment, LLC ("Southern Saints Investment"),[1] Andrew Chapman,[2]
Robert Scarlata,[3] and George Gifford.[4]  She alleges that The
March Group and Southern Saints Investment violated Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42
U.S.C. § 1981.[5]  She also seeks damages against all defendants
for alleged violations of:  (1) the Virgin Islands Civil Rights
Act, 10 V.I.C. § 3; (2) the Virgin Islands Wrongful Discharge

_____

1.  Southern Saints Investment is a limited partner in The March
Group.  Southern Saints Investment, a limited liability
corporation, has two members:  Robert W. Scarlata and George
Gifford.

2.  Andrew Chapman is employed as a manager with The March Group.

3.  Robert Scarlata is the President and Chief Executive Officer
of The March Group.

4.  George Gifford is the Chairman of The March Group.

5.  It is unclear how if at all Southern Saints Investment was
involved in any alleged discrimination or how if at all it could
be deemed plaintiff's employer.  However, it is unnecessary to
reach these issues.

Act, 24 V.I.C. § 76; and (3) the duty of good faith and fair dealing. In addition to compensatory damages plaintiff has a claim for punitive damages.[6] Before the court is the motion of defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[7]

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

I.

Before delving into the facts of this case, we note that the Virgin Islands Local Rules of Civil Procedure provide:

---

6. Plaintiff's amended complaint also alleged violations of 24 V.I.C. § 451 and 10 V.I.C. § 121 et seq., as well as slander and defamation per se and intentional infliction of emotional distress. We previously granted judgment on the pleadings in favor of the defendants on those claims. Lue-Martin v. The March Group, Civ. A. No. 03-105 (D.V.I. July 31, 2007).

7. Two of the defendants, Southern Saints Investment and Andrew Chapman, also filed separate, individual motions for summary judgment. The present motion was filed on behalf of all five defendants, including Southern Saints Investment and Andrew Chapman.

> Any party adverse to a motion [for summary
> judgment] ... must address the facts upon
> which the movant has relied pursuant to
> subsection (a)(1), using the corresponding
> serial numbering and either (i) agreeing that
> the fact is undisputed; (ii) agreeing that
> the fact is undisputed for the purpose of
> ruling on the motion for summary judgment
> only; or (iii) demonstrating that the fact is
> disputed ....  Failure to respond to a
> movant's statement of material facts, or a
> respondent's statement of additional facts,
> as provided by these Rules may result in a
> finding that the asserted facts are not
> disputed for the purposes of summary
> judgment.

V.I. Loc. R. Civ. P. 56(b) and (d).

At numerous points in her opposition to defendants'
motion for summary judgment, plaintiff cites to "Plaintiff's
Response to Defendants' Statement of Facts and Statement of
Additional Disputed Facts."  No such statement has been filed.
Plaintiff has simply submitted various exhibits with her
opposition brief.[8]

The following facts are either undisputed or viewed in
the light most favorable to plaintiff, the non-movant.
Plaintiff, Iva Lue-Martin, is a black woman of Jamaican origin.
Plaintiff was hired by defendant, The March Group, on

---

8.  We note that plaintiff filed a motion to file a corrected
"Exhibit 2" to her opposition.  Plaintiff sought to replace
references to Interrogatory No. 16 in her previously filed
Exhibit 2 to Interrogatory No. 17.  Defendants did not file an
objection to this motion.

There were no specific references to Exhibit 2, Interrogatory
No. 16 in plaintiff's opposition to the motion of the defendants
for summary judgment.  We have, however, considered plaintiff's
Exhibit 2 as including Interrogatory No. 17 in lieu of
Interrogatory No. 16.

February 28, 2002 as a temporary employee.  Plaintiff became a full-time employee of The March Group in May, 2002 and was given the title of Human Resources Manager.  That position did not exist at The March Group before plaintiff was hired.  Plaintiff's starting salary was $50,000, but on October 29, 2002 she was given a $5,000 raise.

As the Human Resources Manager, plaintiff had numerous job responsibilities including:  calculating and generating the payroll; administering the benefits, health care and retirement plans; administering the Virgin Islands Economic Development Commission ("EDC") program; dealing with all employee-related issues and grievances; and facilitating the hiring of new employees.  By all accounts, plaintiff was good at her job.

In October, 2002, Kurcias, Jaffe & Company LLP ("Kurcias"), a certified public accounting firm, completed an audit of The March Group that had begun in May, 2002.  In the course of performing the audit, Kurcias recommended that The March Group needed to create a controller position to increase efficiency.

In December, 2002, The March Group asked Kurcias to "do an analysis of their accounting department in order to help streamline and produce better and more timely records."  Defs.' Statement of Uncontested Material Facts, Ex. Q, Mendelson Dep. 31:3-31:6, Mar. 11, 2008.  The March Group requested the analysis because Kurcias had found errors in The March Group's accounting records in the course of the audit completed in October, 2002.

-4-

The March Group hoped that Kurcias could provide guidance on how to avoid those errors in the future.

In order to perform its analysis, Kurcias began interviewing and observing several of The March Group's employees.  The Kurcias analysis included not only plaintiff's position as the Human Resources Manager but also the following positions:  Chief Financial Officer, Corporate Partnership Program Administrator, Corporate Partnership Program Accountant, Accounts Payable Accountant, Accounts Receivable/Cash Management Accountant, and Accounting Clerk.  Upon completing its work, Kurcias prepared two reports.

The first Kurcias report, dated January 23, 2003, summarized the job responsibilities of several of The March Group's employees, including plaintiff.  At the time of this report, plaintiff's responsibilities included calculating and preparing The March Group's payroll, payroll tax returns and the IRS W-2 forms for all March Group employees.  In the meantime, The March Group had independently decided to out-source those job responsibilities to a company called ADP but had not yet implemented the change.  The record is silent as to the identity of the person or persons at The March Group who made the decision.

With regard to plaintiff's position, Kurcias recommended in the January, 2003 report:

> HR/Pay is an important position in many
> larger companies.  However in smaller to mid-
> range companies the position often is not

full time.  Therefore we have the following
recommendations:

1.  Since the company has decided to out-
source its payroll to ADP, there are far less
time consuming duties associated with this
position.  Therefore, HR/Pay should be
available to assist others.  The logical area
where HR/Pay can assist would be the
[Corporate Partnership Program Administrator]
position due to certain synergies between the
positions i.e. recordkeeping [sic], handling
inquiries and insuring and checking EDC
compliance issues.

2.  After speaking with both Iva Lue Martin
and Perry Brothers [the Corporate Partnership
Program Administrator] it was discovered that
both ladies claimed they were responsible for
having background checks performed on
potential [Corporate Partnership Program]
partners.  This duty should be the
responsibility of [Perry Brothers] since
[she] handles partner matters and not
employee matters.

3.  Iva also mentioned that she did not have
much experience in preparing payroll tax
returns prior to working with [The March
Group].  ADP will be preparing payroll tax
returns in the future, however, the [Chief
Financial Officer] may want to re-review
payroll tax returns filed by Iva.

Defs.' Statement of Uncontested Material Facts, Ex. R at 6.

        Kurcias again recommended that The March Group add a

controller position.  The March Group expressed interest in doing

so but did not want to spend additional money to fund it.

Kurcias was asked to analyze how the company could modify its

current budget to add such a position.  In response, Kurcias

submitted an additional analysis and recommendation, dated

February 7, 2003.  By that time, The March Group had implemented

its decision to out-source some of plaintiff's previous job

responsibilities to ADP.  Thus, with regard to payroll, plaintiff's job responsibilities had changed to submitting all payroll information to ADP and ensuring that all payroll taxes were paid on time.

Among the recommendations made by Kurcias in the February 7, 2003 analysis was the elimination of plaintiff's position.  The letter stated:

> Since the Company has decided to out-source its payroll to ADP, the HR/Payroll functions are far less time consuming and could be assumed by the Controller.  The Controller could then assign a certain amount of those functions to the Accounting Clerk based on the Accounting Clerk's and Controller's available time.  The elimination of the Human Resources/Payroll position would free up approximately $55,000, which could be spent elsewhere.

Defs.' Statement of Uncontested Material Facts, Ex. S at 3.

In late February or early March, 2003, The March Group hired Katherine Wilcosh to fill the newly created controller position.  On March 6, 2003, plaintiff's position with The March Group was eliminated, and plaintiff was terminated from the company.  The job responsibilities that were previously assigned to plaintiff were redistributed to other employees already at the company.

## II.

Title VII of the Civil Rights Act of 1964 provides:

> It shall be an unlawful employment practice for an employer -
>
> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

-7-

> against any individual with respect to his
> compensation, terms, conditions, or
> privileges of employment, because of such
> individual's race, color, religion, sex, or
> national origin ....

42 U.S.C. § 2000e-2(a)(1).

> Section 1981 provides:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence,
> and to the full and equal benefit of all laws
> and proceedings for the security of persons
> and property as is enjoyed by white citizens,
> and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The elements of a cause of action under § 1981 are the same as those under Title VII of the Civil Rights Act of 1964. Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999).  Accordingly, we will consider the two together.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established a three-prong test to determine if a case for employment discrimination should move beyond summary judgment.  First, plaintiff must make a prima facie case of discrimination by showing:  "(1) she is a member of a protected class[;] (2) she was qualified for her position[;] (3) despite these qualifications, she was terminated from her position[;] and (4) she was replaced by someone not in a protected class or someone in a non-protected class, who was otherwise similarly situated, was treated more favorably." Hicks

-8-

v. Arthur, 878 F. Supp. 737, 738 (E.D. Pa. 1995) (citing McDonnell Douglas, 411 U.S. at 802 & n.13).

If plaintiff can establish a prima facie case, an inference of discrimination is created.  The burden of going forward then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802).  If the employer satisfies its burden, plaintiff may defeat defendant's summary judgment motion by coming forward with "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  The burden of proof always remains on the plaintiff.  Woodson, 109 F.3d at 920 n.2.

Defendants, The March Group and Southern Saints Investment,[9] assert that even if plaintiff can establish a prima facie case, they have produced evidence of a legitimate, nondiscriminatory reason for terminating her.  Defendants further maintain that she has failed to present any evidence that the articulated reason should be disbelieved or that discrimination

---

9.  See footnote 5, supra.

was more likely than not a motivating or determinative cause.  We agree.

The March Group's desire to avoid future errors in its accounting records was the impetus for seeking further advice from Kurcias as to how to improve its accounting practices. After Kurcias performed a thorough analysis of The March Group, which included interviewing multiple employees about their job functions and responsibilities, it concluded that a controller position was needed to oversee accounting functions.  The March Group decided that it wanted to add a controller position but did not want to expend additional money.  Kurcias further recommended eliminating plaintiff's position to free up money to spend toward the controller's salary.  There is no doubt that this is a legitimate, nondiscriminatory reason for plaintiff's termination.

The burden then shifts back to plaintiff to come forward with evidence that this reason is pretextual.  To that end plaintiff states that her position should not have been included in the Kurcias audit because she was not part of The March Group's accounting department.  Moreover, according to plaintiff, no consistent reason has been provided for why she was included in the audit.  Plaintiff therefore maintains that an inference can be drawn that she was included in the audit to provide defendants with a nondiscriminatory reason for her firing.

Eric Mendelson, the Kurcias accountant who performed the audit, testified at his deposition that plaintiff was

included in the audit because of her responsibilities regarding payroll. Plaintiff argues that this proffered reason could be disbelieved since George Gifford testified at his deposition that Perry Brothers, the Corporate Partnership Program Administrator for The March Group, was included in the audit because she reported to the company's Chief Financial Officer. This argument is puzzling, for there is no contradiction between Mendelson's deposition testimony and that of Gifford. Plaintiff had extensive payroll responsibilities and like Perry Brothers reported to the Chief Financial Officer.

Most significantly, Eric Mendelson was asked at his deposition: "At any time did anybody at [T]he March Group ever suggest, say or imply to you that they would like to see Ms. Martin's position eliminated." Defs.' Statement of Uncontested Material Facts, Ex. Q, Mendelson Dep. 88:22-88:25, Mar. 11, 2008. He answered, "No." Id. at 89:2. Plaintiff has offered no contrary evidence. She instead relies on pure speculation. This does not satisfy plaintiff's burden.

In an attempt to cast doubt on defendants' reason for terminating her, plaintiff argues that, "[d]efendants' treatment of her, their only Black Manager was discriminatory and different and [d]efendants' treated their white managers better, with respect to the terms and condition of their employment." Pl.'s Opp'n at 2. She does not, however, cite to any evidence to support her position. Indeed, the evidence contradicts this assertion. Sandy Ross, a white manager at The March Group who

-11-

had been employed at the company since 1997, was making almost three thousand dollars less than plaintiff at the time of plaintiff's termination.

Plaintiff also contends that she was "excluded from conferences and meetings relating to her duties, and that she would not even get the courtesy of an introduction to the partners when they visited, even though the white managers were introduced." Id. at 2-3.  According to plaintiff, "[d]efendants even communicated differently with her than they did with their white managers, and their reactions to her complaints and notices of problems that needed to be addressed were dismissive, unresponsive, and at times rude and disparaging." Id. at 3.

Plaintiff's allegation that she was excluded from management meetings and not introduced to white managers is unavailing.  At her deposition, plaintiff responded to the following questions:

> Q.  Tell me about these management meetings that you were not allowed to attend.
>
> A.  Well, if the other managers were having a meeting, they had meetings that I was not invited to.
>
> Q.  Did you ever try to go to one of them?
>
> A.  No.
>
> Q.  You say you weren't allowed to attend them ....  How do you know you weren't allowed to attend them?
>
> A.  Well, I wasn't invited to attend them, so I'm not allowed.  I wasn't allowed to go.

Q.  So there was no policy that says Iva Lue-Martin can't go to meetings, was there?

A.  No.

...

Q.  How do you know what was discussed at these meetings that you didn't go to?

A.  I don't know what was discussed at the meeting.  I said, if they were hiring new employees, certainly the hiring of new employees would involve human resources.

Q.  Okay.  But you don't know what these meetings involved?

A.  No, not specifically.

...

Q.  How do you know that meetings involved hiring new employees?

A.  Because new employees were brought on in the company.  There must have been some planning or discussions or meetings about it.

Q.  Is that an assumption on your part, or do you have knowledge?

A.  I have knowledge that meetings went on.

Pl.'s Opp'n, Ex. 5, Lue-Martin Dep. 73:4-74:24, Dec. 10, 2007.

Plaintiff had no information regarding when these meetings took place, who called the meetings, who attended the meetings, or whether the meeting agendas were relevant to her company responsibilities.[10]  On the contrary, she testified that

---

10.  Plaintiff's opposition brief cites to pages 67-68 and 72-73 of the deposition of Teddi Morrison as further support for her argument that she was excluded from management meetings.  Those pages were not, however, attached as exhibits.

she "probably" attended management meetings where human resources issues were discussed.  Id. at 75:23-76:3.

Plaintiff also testified that when white partners would come into the office she was never introduced to them.  Although plaintiff's opposition to defendants' motion for summary judgment states that defendants were "dismissive, unresponsive, and at times rude and disparaging," her deposition testimony does not support these assertions.  Plaintiff merely testified that defendants "made [her] feel like [she] was more a bother ... to them."  Id. at 39:19-39:21.

Significantly, there are no details regarding who failed to introduce plaintiff to visiting managers or made her feel like a bother.  Even crediting plaintiff's testimony in the light most favorable to her, she has established nothing more than rudeness.  However, Title VII is not "a general civility code for the American workplace."  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).  A lack of civility is not sufficient to preclude summary judgment on a discrimination claim.

There is nothing in the record that casts any doubt on the evidence produced by defendants showing that her position was eliminated so as to make room in the budget for the new position of controller or that her membership in a protected class had any bearing on her termination.  She has raised no genuine issue of material fact for a jury to resolve.  Accordingly, we will grant

-14-

the motion of defendants The March Group and Southern Saints
Investment for summary judgment on plaintiff's Title VII and
§ 1981 claims for racial discrimination.

                              III.

          Plaintiff also claims that The March Group and Southern
Saints Investment[11] fired her in retaliation for engaging in
protected activity in violation of Title VII, which provides in
relevant part:

>          It shall be an unlawful employment practice
>          for an employer to discriminate against any
>          of his employees ... because he has opposed
>          any practice made an unlawful employment
>          practice by this subchapter, or because he
>          has made a charge, testified, assisted, or
>          participated in any manner in an
>          investigation, proceeding, or hearing under
>          this subchapter.

42 U.S.C. § 2000e-3(a).

          To establish a claim for retaliation plaintiff must
prove:  "(1) she engaged in activity protected by Title VII; (2)
the employer took an adverse employment action against her; and
(3) there was a causal connection between her participation in
the protected activity and the adverse employment action."  Moore
v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)
(quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.
1995)).  Retaliation claims under Title VII are subject to the
McDonnell Douglas analysis.  After plaintiff establishes a prima
facie case, the burden of going forward shifts to the employer to

_____

11.  See footnote 5, supra.

                              -15-

advance a legitimate, non-retaliatory reason for its conduct.
Once the employer has done so the plaintiff has the burden of
producing evidence from which a jury could find "both that the
employer's proffered explanation was false, and that retaliation
was the real reason for the adverse employment action." Id. at
342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01
(3d Cir. 1997)).

We first must determine whether plaintiff has
established a prima facie case of retaliation against defendants,
The March Group and Southern Saints Investment.  Activity
protected from retaliation includes opposing a practice that is
unlawful under Title VII, and charging, testifying, assisting or
participating in an investigation, proceeding, or hearing into
violations of Title VII. See 42 U.S.C. § 2000e-3(a).  Plaintiff
maintains that she engaged in a number of different protected
activities.

First, plaintiff contends that she "repeatedly
complained to The March Group that it should post positions and
inform [her] of job openings prior to filing them" and
"repeatedly had to request Defendants' compliance with the law."
Pl.'s Opp'n at 15.  Plaintiff cites her deposition testimony,
which reads:

> Q.  At the end of the second line of that
> paragraph [of your Interrogatory response],
> it says, "I repeatedly and consistently
> insisted that the managers comply with the
> laws[,] rules and regulations of the various
> government agencies."  Can you give me some
> examples of rules and regulations or laws

that you repeatedly insisted that they comply
with?

A.  Well, the EDC rules about training
employees; promoting employees into
management positions; the fire department
rules; the Department of Labor rules about
posting [available job positions].

Q.  Let me stop you, because I want to make
sure you understand my question.  Did you
repeatedly complain or make an issue about
the fire safety rules, –

A.  Yes.

Q.  – or is that a one time issue?

A.  No, I did it several times, because
nothing would happen when I complained.
Nobody did anything.  They didn't pay me any
attention about it, so I'll bring it up on
other occasions.  I would talk to them about
it again.  So nothing happened.

Q.  When would you bring this up with them?

A.  At different – various times.

Q.  I mean, would you –

A.  Um --

Q.  I'm sorry.  Go ahead.

A.  I can't think to give you specifics right
off the moment, but I know I spoke to them
about it ....

Pl.'s Opp'n, Ex.5, Lue-Martin Dep. 123:22-124:25, Dec. 10, 2007.

These complaints, however, are not protected activity

under Title VII because they were not about conduct which Title

VII makes unlawful.[12]  The complaints did not concern "race,

---

12.  Plaintiff also cites to pages 146-48 of her deposition,
however, those pages were not attached to her opposition.

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  In sum, the complaints made by plaintiff do not help to establish her prima facie case.

Plaintiff also asserts that she "repeatedly complained to Defendants about discrimination and other legal breaches."  As supporting evidence, she cites to pages 20-21 and 28-35 of her deposition.  Page 20 states:  "At The March Group, I tried to get them to post jobs, but it never happened, so I didn't really have any involvement [in advertising available jobs]."  Again, this is not protected activity under Title VII.  There is no other mention of any complaints by plaintiff on page 20 or 21.  Turning to pages 28-35 of plaintiff's deposition, she stated that three employees of The March Group, Kelly Roper, Heather Ryner and Carmiece Graves, came to her in her capacity as Human Resources Manager and complained that they were being discriminated against on the basis of race.

In the case of Kelly Roper, plaintiff told Kelly Roper's supervisor, Sandy Ross, and Andrew Chapman,[13] both managers at The March Group, and Robert Scarlata about the complaint.  Plaintiff did not memorialize the complaint in writing, nor did she give any indication in her deposition testimony as to when she told these individuals about Kelly Roper's complaint.  Significantly, plaintiff also testified that

---

13.  Plaintiff testified that she told "Andy" about Kelly Roper's complaint.  We assume that "Andy" refers to Andrew Chapman.

Kelly Roper was given a promotion with the company "later that year." Pl.'s Opp'n, Ex. 5, Lue-Martin Dep. 31:12, Dec. 10, 2007.

When Heather Ryner came to plaintiff with a complaint of discrimination, plaintiff told Sandy Ross and Teddi Morrison, The March Group's Chief Financial Officer, about it. Again, plaintiff did not testify as to when she told them about Heather Ryner's complaint. As with Kelly Roper, plaintiff testified that Heather Ryner was given a promotion "several months" after she raised the issue. Pl.'s Opp'n, Ex. 5, Lue-Martin Dep. 33:19, Dec. 10, 2007.

The excerpted portion of plaintiff's deposition testimony gave no details regarding Carmiece Graves' complaint of discrimination. It does not even state who, if anyone, plaintiff informed about the complaint.

We will assume for present purposes that the above complaints of discrimination are protected activity under Title VII. There is also no doubt that plaintiff suffered an adverse employment action. Nonetheless, plaintiff has failed to establish the third element of her prima facie case — a causal connection between the protected activity and the adverse employment action.

Our Court of Appeals has consistently focused on two main factors to determine whether a causal connection exists: (1) temporal proximity between the protected activity and adverse employment action; and (2) evidence of ongoing antagonism during the time between the protected activity and adverse employment

-19-

action.  Abramson v. William Paterson College, 260 F.3d 265, 288
(3d Cir. 2001).  "Timing alone raises the requisite inference
when it is 'unusually suggestive of retaliatory motive,' but even
if 'temporal proximity ... is missing, courts may look to the
intervening period for other evidence of retaliatory animus.'"
Jensen v. Potter, 435 F.3d 444, 450 (3d Cir. 2006) (quoting
Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.
1997)).  In addition, we must look to the broader context of the
alleged retaliation to determine if there is an inference of
discrimination.  See Farrell v. Planters Lifesavers Co., 206 F.3d
271, 280 (3d Cir. 2000).

          Considering first the temporal proximity, we do not
know the specific dates that plaintiff reported the alleged
discrimination against Kelly Roper, Heather Ryner, and Carmiece
Graves.  It appears from plaintiff's deposition testimony that a
significant amount of time passed between plaintiff's report of
the complaints of Kelly Roper and Heather Ryner and plaintiff's
termination.  Plaintiff testified that after reporting the
complaints, Kelly Roper was promoted "later that year" and
Heather Ryner was promoted "several months" later.  Pl.'s Opp'n,
Ex. 5, Lue-Martin Dep. 31:12 and 33:19, Dec. 10, 2007.  Both
women were promoted while plaintiff was still at The March Group,
so that it can be inferred that she reported Kelly Roper's
complaint at some point in 2002 and Heather Ryner's complaint in
January, 2003, at the latest.  There is no evidence in the record
as to when plaintiff reported Carmiece Graves' complaint of

-20-

discrimination.  At the very least "several months" elapsed
between the protected activity and her termination.  These time
gaps, to the extent they can be discerned, do not of themselves
create an inference of retaliation based upon plaintiff's
protected activity.  See LeBoon v. Lancaster Jewish Cmty. Ctr.
Ass'n, 503 F.3d 217, 233 (3d Cir. 2007).

      Moreover, plaintiff has not produced evidence that she
was subjected to antagonistic behavior during that time.  She
stated at her deposition that she was excluded from management
meetings.  There is no indication when these management meetings
took place.  The record is devoid of any antagonistic behavior
toward plaintiff after she reported the complaints of
discrimination of Kelly Roper, Heather Ryner and Carmiece Graves.

      Looking beyond these two factors, and considering the
broader context of plaintiff's claim of retaliation, there is no
evidence to establish a causal connection between plaintiff's
protected activity and her termination.  As noted above,
plaintiff in her role as Human Resources Manager, states that she
reported complaints of discrimination by Kelly Roper and Heather
Ryner to one or more of Sandy Ross, Andrew Chapman, Robert
Scarlata and Teddi Morrison.  Plaintiff points to nothing in the
record to demonstrate that any of those individuals took any
action to retaliate against her because of these reports.

      Plaintiff has failed to provide any evidence showing a
causal connection between the protected activity and her
termination.  Thus, we will grant the motion of defendants, The

March Group and Southern Saints Investment, for summary judgment
on this claim under Title VII.

IV.

Plaintiff also seeks damages against all defendants[14]
under the Virgin Islands Civil Rights Law, which provides:

> No person, being the owner, proprietor,
> superintendent, manager, agent, or employee
> of any publicly licensed business or any
> other business or industrial establishment,
> shall directly, indirectly or by subterfuge,
> deny employment in or at such business to any
> applicant therefor, or engage in or permit
> <u>any discrimination or differential in pay or
> working conditions for workers doing the same
> work, on account of race, creed, color, or
> national origin</u>, subject only to the
> conditions and limitations established by law
> and applicable in like manner to all persons.

10 V.I.C. § 3(b) (emphasis added).

Defendants argue that plaintiff has neither alleged in
her amended complaint nor come forward with any evidence that she
was treated differently than any other employees performing the
same work on account of her race.  In her amended complaint,
plaintiff alleges that she "was the only black management
employee of [T]he March Group" and "[w]hen there would be
management meetings, [she] would not be allowed to attend by
Defendants."  Am. Compl. at ¶¶ 16-17.  In response to the motion
of defendants for summary judgment, she maintains that she "has
adduced evidence that she was a managerial employee, such that

---

14.  It is unclear what role if any was played by each of
defendants, The March Group, Southern Saints Investment, Andrew
Chapman, Robert Scarlata, and George Gifford, in connection with
this claim for relief.

-22-

she should have been treated in the same, nondiscriminatory manner as other managers, but she was not ...."  Pl.'s Opp'n at 16-17.  She further argues that "whether employees are similarly situated is a question of fact that must be resolved on a case-by-case basis, such that summary judgment must be precluded so that the jury can make this determination."  Id. at 16.

Plaintiff, however, does not point to any evidence that she was treated differently than other employees who were performing the same work.  She merely makes the conclusory statement that she has "adduced evidence" that she was treated less favorably than other managers.[15]  Conclusory statements are not enough to withstand a motion for summary judgment.

Finally, the evidence concerning her exclusion from management meetings is insufficient to raise a genuine issue of material fact that she was subject to different working conditions than others doing the same work.  As we discussed above, plaintiff was extremely vague about the nature of these meetings, when they took place, who called the meetings, and who was included.  In addition, she conceded she probably attended meetings where human resources issues were discussed.

We will therefore grant the motion of all defendants for summary judgment on this count.

---

15.  In the her opposition, plaintiff cites to "Plaintiff's Response to Defendants' Statement of Facts and Statement of Additional Disputed Facts."  As mentioned previously, plaintiff never filed such a document.

V.

Plaintiff also claims that all defendants[16] violated

the Virgin Islands Wrongful Discharge Act, which provides:

> Any employee discharged for reasons other
> than those stated in subsection (a) of this
> section shall be considered to have been
> wrongfully discharged; however, nothing in
> this section shall be construed as
> prohibiting an employer from terminating an
> employee as a result of the cessation of
> business operations or as a result of a
> general cutback in the work force due to
> economic hardship, or as a result of the
> employee's participation in concerted
> activity that is not protected by this title.

24 V.I.C. § 76(c).

Our Court of Appeals has held that the Virgin Islands

Wrongful Discharge Act conflicts with the National Labor

Relations Act, 29 U.S.C. § 164(a), insofar as it is applicable to

supervisory employees.  St. Thomas - St. John Hotel & Tourism

Ass'n v. Virgin Islands, 357 F.3d 297, 302-04 (3d Cir. 2004).

Therefore, the Virgin Islands Wrongful Discharge Act is preempted

by the National Labor Relations Act when the individual claiming

wrongful discharge is a supervisor.  Id.  This includes

managerial employees who, although not explicitly named in the

National Labor Relations Act, are "much higher in the managerial

structure than those explicitly mentioned by Congress, which

regarded them as so clearly outside the Act that no specific

exclusionary provision was thought necessary."  NLRB v. Yeshiva

Univ., 444 U.S. 672, 682 (1980) (internal quotations and

_____

16.  See footnote 14, supra.

-24-

citations omitted).  "Managerial employees are defined as those who formulate and effectuate management policies by expressing and making operative the decisions of their employer."  Id. Moreover, "[m]anagerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management."  Id. at 683.

Defendants maintain that plaintiff was at the very least a supervisor and, more accurately, a manager.  Plaintiff counters that despite her title as Human Resources Manager, her actual job duties were not consistent with those of a supervisory or managerial employee.  We disagree.

At the outset, we note that throughout her amended complaint and her opposition to the motion of defendants for summary judgment, plaintiff refers to herself as a manager. Indeed, in claiming that she was discriminated against in violation of the Virgin Islands Civil Rights Act, plaintiff contends that she was unfavorably treated as compared to other managers at The March Group.  In support of this claim, however, plaintiff now contends that she was a manager in title only.

The evidence in the record establishes without contradiction that plaintiff held a managerial position as a result of her job responsibilities.  For example, after an employee of The March Group claimed that she was being treat poorly, it was plaintiff, as Human Resources Manager, who wrote a letter to the employee stating:  "I can only conclude that your allegations are unsubstantiated and no further action can be

taken at this time."  Defs.' Statement of Uncontested Material
Facts, Ex. I.  In another instance, an employee approached
plaintiff about going on a "Flex Time" schedule.  It was
plaintiff who agreed to that schedule change and notified the
employee when problems with that schedule arose.  Defs.'
Statement of Uncontested Material Facts, Ex. M.  Plaintiff was
responsible for signing written warnings when other employees
violated company policy.  Defs.' Statement of Uncontested
Material Facts, Ex. L.  Plaintiff also signed offer of employment
letters and notified candidates for employment when they did not
receive the desired position.  Defs.' Statement of Uncontested
Material Facts, Exs. N-O.  These job functions are precisely the
sort of decision making responsibilities that typify a managerial
employee.  She was one who was "expressing and making operative
the decisions of [her] employer," and "exercis[ing] discretion
within, or even independently of, established employer policy
...."  NLRB, 444 U.S. at 682-83.

        Therefore, the Virgin Islands Wrongful Discharge Act
does not apply to plaintiff, and we will grant the motion of all
defendants for summary judgment on this count.

                              VI.

        Finally, plaintiff alleges that all defendants[17]
violated a duty of good faith and fair dealing to her that was
imposed by her contractual relationship as an employee of

---

17.  See footnote 14, supra.

-26-

defendants.  In this context, "a claim for breach of the implied covenants of good faith and fair dealing ... must allege acts amounting to fraud or deceit on the part of the employer." Bostic v. AT&T of Virgin Islands, Civ. A. No. 01-226, 2003 WL 25322909 at *7 (D.V.I. Apr. 16, 2003) (quotations omitted).

    In response to defendants' motion for summary judgment, plaintiff states that she "has alleged a contractual relationship between [her] and [T]he March Group, and that Defendants breached their implied duty of good faith and fair dealing."  Pl.'s Opp'n at 21.  In support, plaintiff relies on paragraphs 25, 27, and 37 of "Plaintiff's Response to Defendants' Statement of Facts and Statement of Additional Disputed Facts," paragraphs 11, 37, 38 and 39 of her amended complaint and Exhibit 5B to her opposition brief, which is part of her deposition testimony.

    As mentioned previously, "Plaintiff's Response to Defendants' Statement of Facts and Statement of Additional Disputed Facts" was never filed.  Paragraphs 11, 37, 38, and 39 of her amended complaint read:

>     11.  On February 28, 2002, Plaintiff became employed by The March Group L.L.L.P., as the Human Resources Manager.
>
>     37.  Plaintiff repeats and realleges [sic] each and every allegation contained in paragraphs 1 through 36 above and incorporate[s] same as if more fully set out herein;
>
>     38.  The actions of the Defendants violated their duty of good faith and fair dealing
>
>     39.  As a result Plaintiff has suffered damages as alleged herein.

Am. Compl. at ¶¶ 11, 37-39.

As for plaintiff's deposition testimony, there is no mention whatsoever of conduct of the defendants that amounts to acts of fraud or deceit.  Moreover, plaintiff cannot rely on her unverified amended complaint as evidence to withstand a motion for summary judgment.  See Fed. R. Civ. P. 56(c).  Plaintiff cites no other evidence.  Accordingly, we will grant the motion of all defendants for summary judgment on this claim.[18]

BY THE COURT:


/s/ Harvey Bartle III
HARVEY BARTLE III          C.J.
SITTING BY DESIGNATION

---

18.  In her amended complaint, plaintiff asserted a separate claim for punitive damages.  Since we have concluded that defendants are entitled to judgment in their favor on all the substantive claims asserted by plaintiff, we need not address whether she would be entitled to punitive damages.